**FILED**

APR 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Number: |
| vs. | ) | 07-77 |
| MARK S. CROSS, | ) | |
| Defendant. | ) | |

## STATEMENT OF OFFENSE

The United States of America, by and through its undersigned attorney, Erin Aslan, Trial Attorney, United States Department of Justice, Criminal Division, Public Integrity Section, and the defendant, MARK S. CROSS, personally and through his undersigned counsel, Andy Drumheller, Esq., hereby stipulate to the following facts pursuant to United States Sentencing Guidelines § 6A1.1 and Rule 32(C)(1) of the Federal Rules of Criminal Procedure, that beginning on or about September 10, 2002, and continuing until on or about October 26, 2003, in Caracas, Venezuela, Houston, Texas, and elsewhere:

1. From on or about September 10, 2001 until on or about October 17, 2003, MARK S. CROSS was employed by the United States Department of State ("State Department") as a Foreign Service Officer. Following several months of consular training and language skill development, MARK S. CROSS was assigned to the Consular Section of the United States' Embassy in Caracas, Venezuela ("Consular Section"), where he worked from in or around May 2002 until in or around October 2003.

2. In Caracas, MARK S. CROSS was, among other things, responsible for reviewing and processing applications by Venezuelan citizens for non-immigrant visas to travel to the

United States. In furtherance of these duties, MARK S. CROSS received formal training, as well as periodic briefings and guidance from his supervisors at the Consular Section regarding the appropriate procedures and criteria to employ in reviewing and processing non-immigrant visa applications.

3. One of the topics covered in the training, briefing, and guidance was the appropriate method of utilizing the Consular Lookout and Support System ("CLASS"), a database containing criminal history and other security-related information. In reviewing and processing non-immigrant visa applications, MARK S. CROSS was required to check the names of all applicants against the names contained in the CLASS database. In the event that an applicant's name matched a name in the CLASS database, MARK S. CROSS was required to initiate additional investigative steps to ensure that there was no criminal history, security-related issue, or other impediment to issuing a non-immigrant visa to an otherwise qualified candidate. Before issuing a visa, MARK S. CROSS was required to certify that the CLASS database had been queried and that there was no basis, based on the information contained therein, for the exclusion of the applicant from the United States. Under the existing State Department guidelines and protocols during the relevant timeframe, the act of authorizing the visa for printing in the computer system and the computer record that was generated as a result constituted this certification.

4. MARK S. CROSS repeatedly issued non-immigrant visas without initiating and ensuring that the required investigative steps had been undertaken when applicants names matched names in the CLASS database, thus falsely certifying that there was no basis for the exclusion of these applicants when, in fact, there may have been.

5.  In addition to the issues related to the CLASS database, MARK S. CROSS also issued a non-immigrant visa to a personal acquaintance on or about June 6, 2003 in violation of the applicable State Department protocols. Specifically, MARK S. CROSS received the visa application after-hours at a residence and later made entries to the paper and computer records relating to the application after he had issued the visa.

6.  On or about August 4, 2003, MARK S. CROSS was relieved of his consular visa duties due to the on-going problems with his visa issuances.

7.  On or about October 1, 2003, MARK S. CROSS submitted his resignation from the State Department, effective on or about October 17, 2003. MARK S. CROSS left Caracas on or about October 14, 2003 and returned to the United States.

8.  In connection with his employment as a Foreign Service Officer, on or about January 30, 2002, the State Department issued the Defendant diplomatic passport number 900410691. This diplomatic passport remained at all times property of the United States and, under the applicable State Department regulations, was to be returned to the State Department upon the termination of MARK S. CROSS' official status or mission for which he was issued the diplomatic passport. Indeed, one of the initial pages inside of MARK S. CROSS' diplomatic passport, entitled "Important Information" (all caps and bold removed), advised that "[t]his passport must be returned to Passport Services, Department of State, for retention or cancellation immediately upon the termination of the official status for which the passport was issued or endorsed." Despite this admonition, MARK S. CROSS retained his diplomatic passport after his resignation from the State Department and return to the United States on October 14, 2003.

9.  The applicable State Department regulations further provided that MARK S. CROSS' diplomatic passport was only to be used for official business, with limited exceptions.

With respect to personal travel, MARK S. CROSS was only permitted to use his diplomatic passport for authorized travel to and from the United States and for incidental personal travel while at post. Further, the "Important Information" (all caps and bold removed) page of the passport advised MARK S. CROSS that "[a]ny use of this passport for travel other than that incidental to the discharge of the bearer's or sponsor's diplomatic mission is prohibited, and punishable under Title 18, United States Code, Section 1544." (all caps and bold removed)

10. Notwithstanding these restrictions and advisements, MARK S. CROSS used his diplomatic passport for travel to and from London, United Kingdom in or around October 2003, following his separation from the State Department. On or about October 17, 2003, MARK S. CROSS departed Houston George Bush Intercontinental Airport for London, United Kingdom. On or about October 26, 2003, MARK S. CROSS arrived at Houston George Bush Intercontinental Airport and presented his diplomatic passport for inspection. This trip occurred after MARK S. CROSS resigned from the State Department and thus was personal travel unrelated to his former employment, duties, and mission.

I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1726, that the foregoing is true and correct.

Dated: This __13th__ day of __March__, 2007.

*[signature]*
MARK S. CROSS
Defendant

APPROVED:

WILLIAM M. WELCH II
Chief, Public Integrity Section

By: *[signature]*                                                  *[signature]*
ERIN ASLAN                                              ANDY DRUMHELLER
Trial Attorney                                          DEREK HOLLINGSWORTH
United States Department of Justice                     Rusty Hardin & Associates, P.C.
Criminal Division                                       Attorneys at Law
Public Integrity Section                                5 Houston Center
1400 New York Avenue, N.W., 12th Fl.                    1401 McKinney, Suite 2250
Washington, DC 20005                                    Houston, TX 77010
Telephone:  (202) 514-1412                              Telephone:  (713) 652-9000
Facsimile:  (202) 514-3003                              Facsimile:  (713) 652-9800
E-mail: erin.aslan@usdoj.gov                            E-mail: adrumheller@rustyhardin.com
                                                                dhollingsworth@rustyhardin.com