UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**    ) | |
| ) | |
| v.    ) | **Crim No. 1:07-CR00077-ESH** |
| ) | |
| **MARK S. CROSS,**    ) | |
| ) | |
| **Defendant.**    ) | |
| ) | |

**NOTICE OF FILING**

Defendant Mark S. Cross, through counsel, respectfully submits with this filing two further documents in support of his August 7, 2007 Memorandum in Aid of Sentencing. These two items, which effectively become Exhibits P and Q to the sentencing memorandum, represent excerpts from two documents referenced at page 12 of the sentencing memorandum:

> Report to Congress on the Activities and Operations of the Public Integrity Section for 2005 (Exhibit P); and

> Report to Congress on the Activities and Operations of the Public Integrity Section for 2004 (Exhibit Q).

                                                            Respectfully submitted,


                                                      /s/ Philip T. Inglima
                                                    Philip T. Inglima (D.C. Bar #420119)
                                                    Stephen M. Byers (D.C. Bar #442853)
                                                    Crowell & Moring LLP
                                                    1001 Pennsylvania Avenue, NW
                                                    Washington, DC  2004-2595
                                                    Telephone:   (202) 624-2500
                                                    Facsimile:  (202) 628-5116

Dated: August 8, 2007

- 2 -

OF COUNSEL:

Andy Drumheller*
Southern District of Texas I.D. No. 22734
State Bar of Texas No. 00793642
Derek S. Hollingsworth*
Southern District of Texas I.D. No. 34569
State Bar of Texas No. 24002305
RUSTY HARDIN & ASSOCIATES, P.C.
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010-4035
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800
*Admitted to the District of Columbia Bar *pro hac vice* on April 13, 2007

- 3 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August, 2007, a true and correct copy of the foregoing Notice of Filing and its two attachments were served by facsimile transmission and sent via overnight delivery to:

>Peter M. Koski
>Chief, Public Integrity Section
>United States Department of Justice
>1400 New York Avenue, NW
>12th Floor
>Washington, DC  20005
>(202) 514-3003

　　　　　　　　　　　　　　　　　　　/s/ Philip T. Inglima

# EXHIBIT P

# REPORT TO CONGRESS

## ON THE ACTIVITIES AND OPERATIONS

## OF THE

## PUBLIC INTEGRITY SECTION

## FOR 2005



Public Integrity Section
Criminal Division
United States Department of Justice

Submitted Pursuant to
Section 603 of the Ethics in Government Act of 1978

On May 6, 2005, Percy Lee Powers, the former Deputy Commander and Civilian Executive Assistant for the United States Army, Depot Support Activity, Far East (DSAFE) for United States Forces, Korea, was sentenced to 26 months of imprisonment, three years of supervised release, and ordered to pay $55,124 in restitution to the Army. Powers previously pled guilty to a two-count information charging that he accepted more than $20,000 in bribes and conspired to defraud the United States Army of more than $55,000.

Between 2001 and 2003, Powers served as the Deputy Commander for DSAFE in Seoul, Korea, and was responsible for purchasing and contracting on behalf of the Army. Powers used his official position to violate DOD contracting rules and sole-source several DOD contracts for truck parts, supplies, and services to a Korean contractor in exchange for more than $20,000 in bribes.

## United States v. Raikes, District of Columbia

On August 16, 2005, Patricia Raikes, a former State Department Chief Consular Officer at the United States Embassy in Beirut, Lebanon, was sentenced to one year of probation and a $3,000 fine. Raikes pleaded guilty on April 28, 2005 to a conflict of interest involving illegal supplementation of salary.

As Chief Consular Officer, Raikes was responsible for oversight of the full range of consular activities at the United States Embassy in Lebanon, including the issuance of visas and the enforcement of established embassy regulations. From 1999 through 2001, while serving as Chief Consular Officer, Raikes received thousands of dollars in benefits from foreign businesspeople in the form of paid airline travel and hotel stays for Raikes and her family members. After receiving these benefits, Raikes subsequently issued and/or approved more than 35 visa applications submitted or referred by the foreign

business persons. Many of the individuals who received visas issued and/or approved by Raikes were in fact ineligible to have received tourist visas under the embassy policy at that time.

## United States v. Mapel and Reynolds, Southern District of West Virginia

# EXHIBIT Q

REPORT TO CONGRESS

ON THE ACTIVITIES AND OPERATIONS

OF THE

PUBLIC INTEGRITY SECTION

FOR 2004



Public Integrity Section
Criminal Division
United States Department of Justice

Submitted Pursuant to
Section 603 of the Ethics in Government Act of 1978

**Trial Attorneys: Monika Bickert and Natashia M. Tidwell**

---

**United States v. Stallings, District of Columbia**

On March 31, 2004, Alden P. Stallings, a former Foreign Service Officer with the U.S. Department of State, was sentenced to one year of probation, 100 hours of community service, and a $5,000 fine. Stallings previously pled guilty to one count of submitting false statements while serving as the Deputy Public Affairs Officer at the U.S. Embassy in Seoul, Korea. Stallings resigned from the State Department as part of his plea agreement.

As the Deputy Public Affairs Officer in Seoul, Stallings had the authority to submit to the Embassy's Consular Section referrals on behalf of applicants for non-immigrant visas for entry into the United States. Between 1999 and 2001, Stallings submitted 54 referrals in which he provided false information about his relationship with the applicants. Specifically, Stallings stated that he recommended the issuance of a non-immigrant visa to the applicant because the applicant was an "important post contact" whom he had "personally known" since a specified date. In fact, Stallings did not personally know the applicants.

**Deputy Chief: Raymond N. Hulser**
**Trial Attorney: Monika Bickert**

---

**United States v. Strong, Boone, Ready, Eastern District of Michigan**

On August 3, 2004, Andre Boone and Richard K. Ready pled guilty to conspiracy to obstruct justice and defraud the government, obstruction of justice, witness tampering, and retaliation against a federal law enforcement officer.

On July 29, 2004, Myron Strong, Andre Boone, and Richard K. Ready were indicted on charges of conspiracy to obstruct justice and defraud the government, obstruction of justice, witness tampering, and retaliation against a federal law enforcement officer. Strong, a convicted felon, was also charged with theft of government property, and felony possession of a firearm, after an AK47 assault rifle and a shotgun were recovered from his residence. In addition, Ready was charged with heroin distribution.

Beginning in May 2003, Strong, a longstanding informant for the FBI's Detroit Office, schemed to defraud the FBI by inventing a fictitious international drug conspiracy in order to receive thousands of dollars in informant payments and other expenses for penetrating the alleged drug organization and reporting about its alleged criminal activities. Besides providing FBI agents with fictitious accounts of the organization's drug activities, Strong utilized the services of his friends, Boone and Ready, and possibly others, to play the roles of various international drug dealers supposedly working for the organization. Moreover, during the course of several undercover drug deals between FBI undercover agents and supposed organization members in November and December 2003, Ready, acting in the guise of a drug dealer, met with the undercover agents and obtained several thousand dollars in buy money in exchange for selling drugs which were later determined to be fake. Strong ultimately kept the proceeds from these drug deals.

In December 2003, when Strong knew the FBI obtained a court-authorized wiretap to listen in on conversations taking place on one of the supposed drug dealers' phones, Strong, Boone, and Ready invented phone conversations about the organization's alleged criminal acts. These conversations, information Strong provided,